ROBERT C. SCHUBERT (S.B.N. 62684)
(rschubert@sjk.law)
WILLEM F. JONCKHEER (S.B.N. 178748)
(wjonckheer@sjk.law)
MIRANDA P. KOLBE (S.B.N. 213496)
(mkolbe@sjk.law)
NOAH M. SCHUBERT (S.B.N. 278696)
(nschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone:      (415) 788-4220
Facsimile:      (415) 788-0161

*Attorneys for Plaintiffs Individually and on Behalf of*
*All Others Similarly Situated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMY TURNER, CHRISTOPHER MARTIN, and JOEY BARUCH, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>        Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Breach of Express Warranty;**<br>2. **Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.;**<br>3. **Violation of the Song-Beverly Consumer Warranty Act;**<br>4. **Violation of Cal. Bus. & Prof Code § 17200 et seq.; and**<br>5. **Violation of Cal. Civil Code § 1750 et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

Upon personal knowledge as to their own acts, and based upon their investigation, their counsel's investigation, and information and belief as to all other matters, plaintiffs Remy Turner, Christopher Martin and Joey Baruch ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege:

## SUMMARY OF THE ACTION

1.      This action is brought on behalf of all persons in the United States who purchased, other than for resale, a model year 2015 or later Apple MacBook or a model year 2016 or later MacBook Pro laptop (the "Laptops"), which are equipped with "butterfly switch" keyboards (the "Class").

2.      Prior to the introduction of the butterfly switch keyboard in 2015, Apple used a "scissor switch" mechanism for the keyboard keys on its low-profile laptops.  The keys are attached to the keyboard via two plastic pieces that interlock in a "scissor"-like fashion, and snap to the keyboard and the key. The scissors mechanism links the key to a plunger that depresses a rubber dome. These keyboards are generally quiet and the keys require little force to press. Because the "scissor switch" is a more closed design than the traditional "rubber-dome" keyboard design, debris is less likely to get under the keys and, by extension, into the rest of the computer.  The tradeoff is that scissor-switch keys are more difficult to separate from their base than rubber-domed keys, but they can be removed and replaced.

3.      Butterfly switch keyboards, which Apple began to use in 2015 on MacBooks and in 2016 on MacBook Pros, are even lower profile than scissor switch keyboards. They still prop up the keys with two intersecting pieces of plastic, but their profile is so low that the key barely "travels" at all when it is depressed.  True to the name, butterfly switches are also extremely delicate, held in place by four tiny threads of brittle plastic.

4.      Because of their very low profile, butterfly switch keyboards are resistant to the accumulation of debris underneath the keys.  However, when dust or other tiny particles do get beneath the keys, they are capable of rendering the butterfly switches nonfunctional.  Further, the keys cannot be removed without risk of damage to the keyboard, which may void Apple's

1   warranty.  Most commonly, problems arise with the keyboards' spacebar keys, which cannot be

2   removed, even by Apple's "Geniuses" at its stores. without risking damage to the keyboards.

3   　　　　5.　　The Laptops' defect is substantially certain to manifest. Thousands of consumers

4   have reported sticking or non-responsive keys on their Laptops. Complaints about the butterfly

5   keyboard are prevalent, and include blog posts, tweets, support-forum comments, a Change.org

6   petition[1], and even a satirical song and video.[2]

7   　　　　6.　　Despite its awareness of the defect, Defendant has advertised and continues to

8   advertise the Laptops as having a superior and highly responsive keyboard, with "four times

9   more key stability than a traditional scissor mechanism."  These representations were false and

10  misleading.

11  　　　　7.　　Defendant has at all times failed to disclose that the keyboard is defective,

12  because it is prone to malfunction necessitating costly repair and replacement.

13  　　　　8.　　Further, although the Laptops come with a one-year written warranty from

14  Defendant, Defendant refuses to honor its warranty obligations, attributing the keyboard defect

15  

16  　　　[1] https://www.change.org/p/apple-apple-recall-macbook-pro-wdefective-keyboard-replace-with-different-working-keyboard (last visited May 10, 2018).

17  　　　[2] https://www.youtube.com/watch?time_continue=83&v=FdS3tjEIqUA.  The lyrics are as follows:

18  

19  I'm pressing the space bar
    I'm pressing the space bar
    I'm pressing the space bar
20  I'm pressing the space bar
    And nothing is happening

21  

22  This computer is about a year old
    And it was very expensive
    I had been waiting to upgrade
23  For a long time

24  And now you're telling me
    It would need extensive
25  Surgery for a speck of dust
    Lodged beneath the butterfly

26  

27  I found your instructions
    They were not helpful

28  I bought this can of air
    I feel like an idiot

1  to owner negligence, or advising Laptop owners to attempt home remedies, such as using

2  compressed air on the keyboard, which it knows will not permanently repair the defect.

3       9.    Responding to hundreds of complaints on its own website, as well as on social

4  and traditional media sites, Apple has posted a "solution" to the problem on its website, which

5  is also advocated as a remedy by its "Genius" bar employees.  The "solution" – which *Business*

6  *Insider* has characterized as "absurd" -- requires holding the Laptop at a 75 degree angle with

7  one hand while blowing a spray can of air at the affected keys multiple times.  For many Laptop

8  owners, the solution does not work at all; for others, it only works temporarily.  When the

9  "solution" does not work, or stops working, the entire lower panel of the Laptop must be

10  replaced.  And unfortunately, even replacement does not preclude recurrence of the problem.

11       10.    All Laptops are sold with a one-year warranty from Apple.  However, Apple does

12  not fulfill its warranty obligations, instead directing many customers to self-help solutions when

13  their defective keyboards are rendered inoperable.  When Apple does provide warranty service,

14  the keyboard replacement does not ensure a permanent fix.  And for consumers outside of the

15  warranty period, Apple denies warranty service, instead directing them to pay for the

16  replacement at a cost of between $400 and $700.

17       11.    By shipping and selling defective Laptops, Defendant sold and continues to sell

18  goods that are substantially below the quality generally available in the market, are not fit for the

19  use for which they were intended, and are not adequately packaged and labeled. Defendant also

20  concealed and continues to conceal the problems through its marketing, advertising, and

21  packaging of the Laptops.

22       12.    Plaintiffs bring this action to obtain relief for themselves and other Laptop

23  purchasers in the United States.

## PARTIES

25       13.    Plaintiff Remy Turner is a citizen of Washington.

26       14.    Plaintiff Christopher Martin is a citizen of Florida.

27       15.    Plaintiff Joey Baruch is a citizen of California.

28

CLASS ACTION COMPLAINT

16.     Defendant Apple Inc. ("Apple" or "Defendant") is incorporated under the laws of the State of California and has its principal place of business in Cupertino, California.

**JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because there are more than 100 proposed Class Members, some members of the proposed class and the Defendant are citizens of different states, and the amount in controversy exceeds $5 million.

18.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is within this District and it has sufficient minimum contacts with California such that the exercise of jurisdiction by this Court over Defendant is consistent with notions of fair play and substantial justice.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

20.     Intradistrict Assignment: Pursuant to Civil L.R. 3-2(c) and 3-5(b), assignment to the San Jose Division of the Northern District of California is proper, because Defendant's principal place of business is in Santa Clara County, because a substantial part of the events or omissions which give rise to the claim occurred in Santa Clara County, and because Defendant's contracts with its customers, including Plaintiffs and the Class, include a forum selection provision stating that venue for any disputes between Apple and its customers shall be in the state and federal courts located in Santa Clara County, California.

**THE NAMED PLAINTIFFS' EXPERIENCES**

21.     On April 29, 2017, plaintiff Remy Turner purchased a 15 inch MacBook Pro at a Best Buy store in Lubbock, Texas, and paid $1,986.40.

22.     Prior to purchasing his laptop, Mr. Turner saw an advertisement for the new butterfly keyboard design for the MacBook Pro on Apple's website, which described the keyboard as a responsive and high quality keyboard.

1     23.     Following his purchase, Mr. Turner set up his Laptop for use pursuant to the
2    instructions provided.

3     24.     Shortly after his purchase, Mr. Turner noticed that the right side of the space bar
4    on the keyboard would get stuck in the down position. Mr. Turner used cans of compressed air
5    designed for keyboard cleaning whenever this occurred, and sprayed on the affected area to try
6    to solve the problem.

7     25.     Due to the recurring nature of the problem, Mr. Turner also called the Best Buy
8    store, which advised him to bring the Laptop in, as the keys were not designed to be removed,
9    as on older Laptops.

10    26.     When the problem continued, Mr. Turner returned the Laptop to the Best Buy
11   store in Lubbock, Texas. Mr. Turner received a replacement unit, but experienced the same
12   sticking space bar problem. Shortly thereafter, Mr. Turner returned the replacement Laptop to
13   Best Buy, and received a second replacement unit.

14    27.     Mr. Turner continues to experience repeated failures with the functionality of the
15   keyboard on his MacBook Pro. Each of the three units Mr. Turner has owned has had the same
16   keyboard problem with the sticking space bar.

17    28.     On December 16, 2016, plaintiff Christopher Martin purchased a MacBook Pro
18   15 inch Laptop online from the Apple Store website, custom ordered with a second internal GPU
19   AMD Radeon PRO 460, and paid $2,877.23.

20    29.     Prior to making his purchase, Mr. Martin viewed advertising for the butterfly
21   design keyboard feature as displayed on the Apple website, in a manner as shown on the screen
22   capture below. Mr. Martin understood this feature to not only "increase comfort" when typing,
23   but also to allow Apple to optimize the physical space available in the new, thinner design.

24

25

26

27

28

---

CLASS ACTION COMPLAINT

## Enhanced butterfly mechanism.
## Key to the keyboard.

Now, with our second-generation butterfly mechanism, the keyboard experience is refined for greater comfort and responsiveness. So when your finger strikes a key, it goes down and bounces back with a crisp motion that you'll appreciate the moment you start typing.



Traditional scissor
mechanism



Apple-designed second-
generation butterfly
mechanism

30.     Following his purchase, Mr. Martin set up his Laptop for use pursuant to the instructions provided.

31.     Mr. Martin noticed around August of 2017 that the spacebar would get stuck in the pressed position, but with a hard press, would unstick. This would happen roughly once every 1 to 2 weeks, and Mr. Martin continued to address the problem with a hard press on the key.

32.     Over time, however, the failures happened more frequently, which led Mr. Martin to use a can of compressed air to spray in between the keys, in an attempt to remedy the situation. Again, it seemed to temporarily fix the problem.

33.     Eventually, starting around January of 2018, the spacebar would get stuck and nothing Mr. Martin would do would fix the problem. This continues to occur about once every few days, and it will stay stuck for about a week.

34.     Mr. Martin's computer is now beyond its warranty period. Mr. Martin has read that Apple charges several hundred dollars to fix this issue. The only thing that appears to temporarily fix the issue is shaking the Laptop until the key gets unstuck.

35.     Mr. Martin continues to experience repeated failures with the functionality of the keyboard on his MacBook Pro.

36.     On July 21, 2017, plaintiff Joey Baruch purchased a MacBook Pro 13 inch from an Apple Store in Sherman Oaks, California, and paid $1,974.91.

---

CLASS ACTION COMPLAINT

37.     Following his purchase, Mr. Baruch set up his Laptop for use pursuant to the instructions provided.

38.     Shortly after his purchase, Mr. Baruch noticed the sporadic failure of certain keys, including the space bar, and the "R", "T" and "Enter" keys. This problem impaired Mr. Baruch's ability to use the Laptop.

39.     Once the problem began, Mr. Baruch tried to clean the keyboard using compressed air or a cloth to improve its performance, but the problem progressively got worse.

40.     By early 2018, the keyboard performance became so bad that Mr. Baruch needed to take his Laptop in for repair. He brought it to the Apple Store in Sherman Oaks, California. Mr. Baruch is informed and believes his keyboard was replaced. The repair occurred at or about the end of March 2018, and took approximately 5 days.

41.     Shortly thereafter, however, the issue resumed on the new keyboard, including the space bar sticking. The Laptop's poor performance has become a substantial distraction for Mr. Baruch.

42.     Mr. Baruch continues to experience repeated failures with the functionality of the keyboard on his MacBook Pro.

**COMMON ALLEGATIONS**

43.     Apple launched the 12 inch MacBook with a butterfly keyboard at an event broadcast from Apple's Cupertino headquarters on March 9, 2015.   Apple's Senior Vice President for worldwide marketing, Phil Schiller, described the new keyboard as follows:

> The butterfly mechanism is built with a single assembly. And is supported by a stainless steel dome switch. And that all adds up to a key that is much more precise, and accurate. In fact it is four times more stable than that scissor mechanism. Yet is 40% thinner allowing us to make a thinner keyboard. And we also made the key cap larger, making it even easier to strike and get a beautiful typing experience. . . . The keys are much more precise, much more accurate, even if you strike them on the side. It is a beautiful keyboard . . . .

44.     MacRumors published an article following the launch event, in which it reported:

> With the new MacBook, Apple has introduced a redesigned keyboard, featuring a new butterfly mechanism for the keys to make them both more stable and more precise. The edge-to-edge keyboard offers keys with 17 percent more surface area and a redesigned feel.

45.     Apple began selling the MacBook on April 10, 2015. The price for the Laptop started at $1,299 for the base configuration with 256 GB of flash storage. An upgraded model cost $1,599 and contained 512 GB of storage and a faster processor.

46.     On its website dedicated to the MacBook, Apple describes the keyboard as "A keyboard refined for an even better hands-on experience," and states:

> We believe that a comfortable, full-size keyboard is an essential part of any notebook. To fit one into MacBook, we designed a keyboard from the ground up — including each key and its underlying mechanism. This makes the whole keyboard not only much thinner, but also more comfortable and precise, so your fingers feel right at home.
>
> **Enhanced butterfly mechanism.**
> **Key to the keyboard.**
>
> Now, with our second-generation butterfly mechanism, the keyboard experience is refined for greater comfort and responsiveness. So when your finger strikes a key, it goes down and bounces back with a crisp motion that you'll appreciate the moment you start typing.

https://www.apple.com/macbook/, last visited May 15, 2018.

47.     On October 27, 2016, Apple held a launch event for the MacBook Pro at its Cupertino headquarters.

48.     During the event, Schiller highlighted the MacBook Pro's butterfly keyboard, hailing it as revamped and upgraded, and stating that "the keyboard . . . [is] more responsive, it gives an even greater sense of keyboard travel as you press on it. It is a great keyboard. I could talk all day about it."  Their primary benefit, according to Schiller, was that they helped make the new Laptops 3.1 millimeters thinner.

49.     On its website dedicated to the MacBook Pro, Apple describes the keyboard as follows:

> Keyboard and Trackpad
>
> More responsive keyboard. More expansive trackpad.
>
> Interacting with MacBook Pro is a smooth experience all around. The keyboard features our second-generation butterfly mechanism — providing four times more key stability than a traditional scissor mechanism, along with greater comfort and responsiveness. And the spacious Force Touch trackpad gives your fingers plenty of room to gesture and click.

https://www.apple.com/macbook-pro/?afid=p238%7Cs0vC2LySe-dc_mtid_1870765e38482_pcrid_198777681791_&cid=aos-us-kwgo-mac--slid--product-, last visited May 15, 2018.

50.     The price for the MacBook Pro varied depending upon the model. A 13-inch MacBook Pro without a Touch Bar (2.0 GHz dual-core Intel Core i5 processor with Turbo Boost, 8GB memory, 256 GB flash storage) was offered for $1,499. An upgraded model of the 13-inch MacBook Pro with a Touch Bar was offered for $1,799. The 15-inch MacBook Pro equipped with the Touch Bar (2.6 GHz quad-core Intel Core i7 process with Turbo Boost, 16GB memory, 256GB flash storage) was offered for $2,399. Each of these models came with the butterfly switch keyboards. The MacBook Pro went on sale on October 27, 2016, with Touch Bar models shipping in the weeks that followed.

**THE KEYBOARD DEFECT MANIFESTS SOON AFTER LAUNCH**

51.     Although the Laptops appear to function normally when new, the Laptops' keyboards suffer from a host of problems, including sticking keys, keystrokes failing to register, keys typing letters or commands multiple times when struck only once, or keys simply not working at all.

52.     These problems arise from a design defect that permits a minute amount of dust to settle under the keys and render them inoperable.  That the keys cannot be readily removed for cleaning exacerbates the problem:  when one of the keys is affected, the entire keyboard must be replaced.

53.     This defect renders the keyboards different from, and inferior to, Apple's intended manufacturing result.

54.     When consumers experience these keyboard problems, the Laptops can no longer reliably input keystroke commands, rendering the Laptop unusable for its ordinary and intended purpose.

55.     All of the Laptops are subject to the same defect.  Although the defect may take longer to manifest for some users than for others, all Laptops are reasonably likely to manifest the keyboard defect during their useful lives.

**APPLE HAS BEEN AWARE OF THE DEFECT SINCE THE BUTTERFLY**
**KEYBOARD WAS LAUNCHED**

56.     Apple knew or should have known of the butterfly keyboard defects before the Laptops were ever sold to the public, as a result of standard pre-release product testing.

57.     Further, as described herein, Apple knew or should have known that that the Laptops were defective shortly after the 12 inch MacBooks were initially launched in 2015, and shortly after the MacBook Pros were launched in 2016, because, shortly after each launch, the keyboard was the subject of numerous consumer complaints published on the Company's website and a variety of internet message boards, such as MacRumors, social and traditional media, and retailer websites, and Apple continuously monitors its own website as well as other web pages, including MacRumors, and social and traditional media outlets.

58.     Evidencing its awareness of the widespread problem, on June 7, 2017, Apple published a "solution" to the problem on its website, https://support.apple.com/en-us/HT205662, last visited on May 15, 2018.  The webpage provides as follows:

**HOW TO CLEAN THE KEYBOARD OF YOUR MACBOOK OR MACBOOK PRO**

If your MacBook (2015 and later) or MacBook Pro (2016 and later) has an unresponsive key, or a key that feels different than the other keys when you press it, follow these steps to clean the keyboard with compressed air.

As you follow these steps, remember to use the straw included with the compressed air to control airflow, and keep the end of the straw about a half-inch away from the keyboard as you spray. Also remember to not invert the air can while you're spraying.

Hold your Mac notebook at a 75-degree angle, so it's not quite vertical.



Use compressed air to spray the keyboard, or just the affected keys, in a left-to-right motion.

Rotate your Mac notebook to its right side and spray the keyboard again, from left to right.



Repeat the action, this time with your Mac notebook rotated to its left side.

**Learn more**

If any keys are still unresponsive after you've followed these steps, visit an Apple Retail Store or Apple Authorized Service Provider for service.

Learn more about cleaning your other Apple products.

59.     On October 22, 2017, following Apple's publication of the above "solution," *Business Insider* published an article entitled, "Apple's official fix is for its new MacBook keyboard is absurd." The article described problems that its author had experienced with Apple's butterfly keyboard, along with Apple's recommended fix – "to basically turn the entire keyboard

nearly vertical and blast it with air until the particle eventually falls out." As the author explained, "Apple recommends you take your laptop — some models cost thousands of dollars, mind you — turn it nearly vertical, and then make three passes with a can of compressed air." Unsurprisingly, this "solution" failed to solve the problem with the author's Laptop.

60. Also in October 2017, an article was published in the online publication, The Outline, entitled, "THE NEW MACBOOK KEYBOARD IS RUINING MY LIFE: A. It's so bad." In the article, Johnson described his experience returning to the Apple store the third time the butterfly keyboard on his MacBook Pro malfunctioned. As they had each of the previous times Johnson had shown Apple's "Genius Bar" representatives the malfunctioning space bar on his keyboard, the representative suggested the problem was the result of a speck of dust that had worked its way under the spacebar key. Johnson responded: " 'If a single piece of dust lays the whole computer out, don't you think that's kind of a problem?' "

61. The article continued:

The primary motivator behind the rise of the butterfly switch seems to be that Apple keeps trying to make all its products thinner, to a degree beyond reason at this point (MacBook Pros now weigh as little as three pounds). But it also stands to reason Apple's logic went something like this: scissor switch = lower profile = less dirt under the keys; therefore butterfly switch = even lower profile = even less dirt under the keys, and a better keyboard for everyone, theoretically, except for people who like the feeling of a key moving under their fingers or, as it's also called, typing.

…

Perhaps it's true that less dirt gets under butterfly switched-keys. But therein lies the problem — when dirt does get in, it cannot get out. A piece of dust is capable of rendering a butterfly switch nonfunctional. The key won't click, and it won't register whatever command it's supposed to be typing. It's effectively dead until someone can either shake loose the debris trapped under it or blow at the upside-down keyboard Nintendo-cartridge style. Meanwhile, Apple quietly put up a page with instructions expressly to try and help people with dead butterfly switch keys.

The problem with dead keys is that, unless you can stop what you're doing mid-paper or report or email or game and have a physical tiff with your computer, the temptation to just slam a little harder on those delicate keys to get the N or B or period you need until you reach a stopping place is high. But there is no logical at-home remedy for the consumer; when one key on a butterfly switched-keyboard becomes nonfunctional, unless you can dislodge whatever dust or crumb is messing it up without being able to physically access it, the keyboard is effectively broken. If you remove the key to try and clean under it, you stand a high chance of breaking it permanently, but if you leave it

---

there and continue to have to pound the key to type one measly letter, you also might break it permanently. ….

… Apple forums are overflowing with reports of Geniuses who have told customers that Apple is "collecting data" on the issue. One corporate issuer of the MacBook Pros in question reported to me that its business has encountered a significant number of keyboard issues, but "less than 5% for sure." Another Genius explained to me that he had seen an overwhelming number of the computers with keyboard issues, the spacebar in particular — while some keys can be very delicately removed, the spacebar breaks every single time anyone, including a professional, tries to remove it. This is a big problem, since, according to the Genius I spoke to, it's the key most susceptible to acting up from the aforementioned piece of dust. "I would say it's THE issue on this computer," he told me.

…

If a computer with actually broken, dead, or malfunctioning keys is brought into the Apple Store, Geniuses run no fewer than three diagnostic tests that each take about 15 minutes. One involves the Genius pressing every single key on the keyboard to see if the switch is responsive, a test I am told was added in response to the sheer number of keyboards coming back broken. The process takes an hour.

If Apple decides to replace the keyboard, it sends out the computer to replace the entire top case; there is no such thing as replacing an individual key or just the keyboard. On a Macbook Pro, the top case retails for $700, but the computers haven't been around long enough for anyone to be out of warranty yet. In regular MacBooks, which were first available in the spring of 2015, Apple has quoted as much $330 to replace a top case out of warranty. The path from "a piece of dust" to "$700 repair" is terrifyingly short.

62.    On March 9, 2018, *Business Insider* published a follow-up article regarding the Laptops' keyboard, stating that the problem with the keyboard "dust or other small particles can get stuck under the spacebar or other keys and make it unresponsive" … "is widespread." According to *Business Insider*,

Since Business Insider covered the issue in October, we've received scores of reader emails with the same problem. Fixing it can cost hundreds of dollars at an Apple store.

A sampling from readers in the past months:

"The spacebar is almost nonfunctional. I have to press it repeatedly to get it to register a space."

"I'm one of the Apple customer that has this problem two months after buying an expensive MacBook Pro 13' 2017."

"I called the place where I bought the MacBook and they said it can be sent to Apple but it might cost a couple hundred dollars to fix. I have only had this since August this year."

http://www.businessinsider.com/macbook-keyboard-issue-fix-detailed-by-apple-in-new-patent-2018-3.

**APPLE'S HAS NOT ADEQUATELY ADDRESSED THE DEFECTIVE LAPTOPS**

**THROUGH ITS WARRANTY COVERAGE**

63.     Apple provided (and provides) a written one-year limited warranty with each Laptop.

64.     Apple's warranty states, in pertinent part:

WHAT IS COVERED BY THIS WARRANTY?

Apple Inc. of One Infinite Loop, Cupertino, California 95014, U.S.A. ("Apple") warrants the Apple-branded hardware product and Apple-branded accessories contained in the original packaging ("Apple Product") against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser ("Warranty Period").

\*\*\*

WHAT WILL APPLE DO IN THE EVENT THE WARRANTY IS BREACHED?

If during the Warranty Period you submit a claim to Apple or an AASP in accordance with this warranty, Apple will, at its option: (i) repair the Apple Product using new or previously used parts that are equivalent to new in performance and reliability, (ii) replace the Apple Product with the same model (or with your consent a product that has similar functionality) formed from new and/or previously used parts that are equivalent to new in performance and reliability, or (iii) exchange the Apple Product for a refund of your purchase price.

65.     Despite its Limited Warranty, Apple has failed to provide an effective remedy for the Laptops' defect, instead instructing consumers to attempt futile repairs, as discussed above. Apple representatives frequently attempt to pass blame for the defective keyboards to consumers, telling the consumers that their problems are due to dust and debris getting under the keyboard, and that consumers—not Apple—should try to fix this problem.

66.     Further, even when Apple has agreed to repair or replace defective Laptops, the repairs and replacements simply result in the consumer obtaining a replacement Laptop or a replacement keyboard on their Laptop, but the replaced or repaired Laptop has the same defectively designed butterfly keyboard.  As a result, consumers experience repeated keyboard failures.

67.     As is evidenced on Apple's own as well as the MacRumors website, Apple is well-aware that many consumers who have received a repaired or replacement Laptop from Apple experience subsequent or repeated keyboard failure:

Naimfan, posted Nov. 3, 2017

A brief review of threads in Apple support indicates it is relatively common. In my most recent communications with Apple, each person I spoke or chatted with has said keyboard issues are much more frequent than in the past. Only one person, at an Apple store, was willing to put a number on it; he suggested that he sees approximately 1 failure per 5 machines. I have no way of evaluating the veracity of that statement, but from my personal experience that seems low - as noted above, I'm on my third keyboard with this machine, and I'm headed to Apple on Saturday to insist on a replacement.

https://forums.macrumors.com/threads/2017-macbook-pro-with-touch-bar-keyboard-issue.2083845/.

Automaticftom, posted Nov. 17, 2017

I had the top case/keyboard replaced on a 2016 15" twice, meaning three different keyboards failed. The 2017 I have seems to be OK so far. It's been suggested that heat is a problem - my 2016 had the 460 GPU, which may have overheated the butterfly mechanism of certain keys and warped them, causing the problem.

https://discussions.apple.com/thread/8106230.

project 2501, posted July 1, 2017

Just adding my voice. my 2017 mbpro was a terrible painful experience - keyboard failures amongst others (see my thread).

…

Apple genius himself told me "the repair rooms are full of them" .. them being the 2016/2017 MacBook pros.

https://forums.macrumors.com/threads/2017-macbook-pro-with-touch-bar-keyboard-issue.2083845/page-4.

Calebjacobo, posted Apr. 17, 2018

I'm on my second keyboard on my 15-inch 2016 MBP. Both times my keys got stuck they had to send it to Apple and replace the whole top piece where the keyboard is. … A laptop that is so delicate and sensitive to dust is no good.

https://forums.macrumors.com/threads/2017-macbook-pro-with-touch-bar-keyboardissue.2083845/page-4

537635, posted Apr. 22, 2018

After three topcase replacements they put a 2017 topcase & keyboard back in January. Three months later I'm starting to get double keys registered instead of single ones.

1   Laptop hasn't been moved from my desk in three months, absolutely no food around it, have had a keyboard cover on all the time ….

2   68.   An article published by Stephen Hacket on his blog, 502pixels.com, on October

3   17, 2017, recounted the author's attempt to fix his Laptop's defective keyboard:

4   I, like the good kbase follower that I am, consulted and followed Apple's directions for dealing with this:

5

6   Hold your Mac notebook at a 75-degree angle, so it's not quite vertical.

7   Use compressed air to spray the keyboard, or just the affected keys, in a left-to-right motion.

8   Rotate your Mac notebook to its right side and spray the keyboard again, from left to right.

9

10   Repeat the action, this time with your Mac notebook rotated to its left side.

11   I walked through the process, somehow without dropping my notebook on the concrete floor of my studio. The travel of my i key improved somewhat, but I still had to strike the key with a lot of additional force for my key press to register. I had work to do, so I pressed on, whacking the i key with a bunch of force when I needed to use it.

12

13   After a couple days of light usage, the problem got worse.

14   The bottom lip of the key began to flip up a little bit as the key tried sprinting back up after being depressed. Light was leaking around it, and eventually this happened:

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21
22    One of the tiny arms that the key cap clips onto is broken. My nearly $2,000 laptop that I
23    bought less than a year ago is now missing a key, as I shared with our Connected
      audience this weekend before using an iBook G3 for the rest of the show:
24
25
26
27
28



I have a Genius Bar appointment set up for the end of the week. I have the i key ready, tucked away in a small plastic baggie, as if it was a piece of police evidence. I'm not looking forward to it.

https://512pixels.net/2017/10/theres-no-i-in-keyboard/.

## CLASS ACTION ALLEGATIONS

69.     Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure Rules 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4) as representatives of the following Class:

All persons in the United States who purchased, other than for resale, a model year 2015 or later Apple MacBook, or a model year 2016 or later MacBook Pro laptop, equipped with a "butterfly" keyboard (the "Laptops").

70.     Plaintiffs bring their claims under California's Song-Beverly Consumer Warranty Act and Consumer Legal Remedies Act on behalf of the following Subclass:

All persons in the United States who purchased, other than for resale, one or more of the Laptops for personal, family or household purposes.

71.     Excluded from the Class and Subclass are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors,

---

employees, subsidiaries, and affiliates, as well as all judges assigned to this case and any members of their immediate families or judicial staff.

72.     Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

73.     Further, this action is brought and may be properly maintained as a class action pursuant to Rule 23.  This action satisfies the requirements of Rule 23, including numerosity, predominance of common questions, typicality, adequacy, and superiority.

74.     *Numerosity*.  While the exact number of members of the Class and Subclass is currently unknown and can be ascertained only through appropriate discovery, Plaintiffs, on information and belief, allege that the Class and Subclass each include at least tens of thousands of members.  Further, members of the Class and Subclass are widely dispersed throughout the country.  Individual joinder of the Class and Subclass members would be impractical.

75.     *Predominance of Common Questions*. Questions of law and fact common to the Class members predominate over any questions that may affect only individual Class and Subclass members, because Apple acted on grounds generally applicable to the Class as a whole.

76.     Questions of law and fact common to the Class include, but are not limited to:

   a.     Whether the Laptops contained a defect at the time of sale;

   b.     Whether the Laptops are of the same quality as those generally acceptable in the market;

   c.     Whether the Laptops are fit for the same purpose for which the goods are sold;

   d.     Whether Apple breached express and implied warranties connected with the Laptops;

   e.     Whether Apple represented that the Laptops have characteristics, uses or benefits that they do not have;

   f.     Whether Apple represented that the Laptops are of a particular standard, quality or grade when they are of another;

g.      Whether Apple knew of the defect, but continued to promote and sell the Laptops without disclosing the problems with the butterfly keyboard and their consequences to consumers;

h.      Whether reasonable consumers would consider the keyboard defect material to their decision whether to purchase a Laptop;

i.      Whether Apple's affirmative representations and omissions regarding the butterfly keyboard were likely to deceive a reasonable consumer;

j.      Whether Apple acted unlawfully, unfairly, and/or fraudulently in violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, et seq.;

k.      Whether Plaintiffs and Class members overpaid for their Laptops as a result of the latent keyboard defect;

l.      Whether Plaintiffs and Class members are entitled to equitable relief, including restitution and injunctive relief; and

m.      Whether Plaintiffs and Class members are entitled to damages or other monetary relief, and if so, in what amount.

77.     *Typicality*. Plaintiffs' claims are typical of the claims of all Class members. Plaintiffs, like all Class members, purchased Lapbooks that contain defective butterfly keyboards and are subject to a common express warranty.

78.     Plaintiffs, like all Class members, would not have purchased, or would have paid substantially less for, the Laptops had they known of the defect or the fact that Apple would respond inadequately when the defect manifested.

79.     Further, Plaintiffs, like all members of the Class, are subject to Apple's terms and conditions, which provide that California law governs their disputes with Apple. Plaintiffs and the Class's purchases of the Laptops are subject to Apple's Sales & Refund Terms and Conditions, which incorporate by reference Apple's Terms of Use, which in turn provide that disputes between Apple and its customers "will be governed by the laws of the United States and by the laws of the State of California without regard to its conflicts of laws provisions."

80. *Adequacy*. Plaintiffs will fairly and adequately protect the interests of the Class. They have no interests antagonistic to the interests of other Class members and are committed to vigorously prosecuting this case. Plaintiffs have retained competent counsel experienced in the prosecution of consumer protection class actions involving defective consumer electronics.

81. *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, no Class member is likely to pursue legal redress individually for the violations detailed in this complaint. Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create the potential for inconsistent and contradictory rulings. By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELEF**

**BREACH OF EXPRESS WARRANTY**

82. Plaintiffs incorporate the above allegations by reference.

83. Defendant provides a one-year written Limited Warranty to consumers in connection with every sale of a Laptop.  The Limited Warranty is included in the Laptops' packaging and is published on Apple's website.

84. Under the terms of the Limited Warranty, Apple warranted "against defects in materials and workmanship" in the Laptop "when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser . . . ."

85. Apple's Limited Warranty further provides that if the warranty is triggered during the warranty period, Apple will either: "(i) repair the Apple Product using new or previously used parts that are equivalent to new in performance and reliability, (ii) replace the Apple Product with the same model (or with your consent a product that has similar functionality) formed from

1  new and/or previously used parts that are equivalent to new in performance and reliability, or

2  (iii) exchange the Apple Product for a refund of your purchase price."

3      86.      Notwithstanding the Limited Warranty, Plaintiffs' and Class members' Laptops

4  were materially defective at the time of sale. The defect is inherent to the Laptops and renders

5  the Laptops substantially likely to fail.  As a result, the Laptops are unsuitable for their primary

6  purpose.

7      87.      Plaintiffs and the Class used their Laptops in a manner consistent with Apple's

8  operating instructions prior to manifestation of the latent defect.

9      88.      Apple was on actual notice of the defective nature of the Laptop before selling

10  Plaintiffs and Class members their Laptops and received timely notice of the breaches they

11  experienced.

12      89.      Despite reasonable opportunities to honor the promises in its express warranty,

13  Apple failed to furnish an effective remedy to Plaintiffs and the Class.

14      90.      Apple's failure to provide Plaintiffs and Class members with non-defective

15  replacement devices, an effective repair, or refunds of the purchase price breached its obligations

16  under the warranty.

17      91.      As a direct and proximate result of Apple's breaches of express warranty,

18  Plaintiffs and Class members have been damaged in an amount to be proven at trial.

19                          **SECOND CLAIM FOR RELIEF**

20              **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

21                  **15 U.S.C. § 2301, ET SEQ. ("MMWA")**

22      92.      Plaintiffs incorporate the above allegations by reference.

23      93.      The Laptop is a "consumer product" under the MMWA. 15 U.S.C. § 2301(1).

24      94.      Plaintiffs and Class members are "consumers" under the MMWA. 15 U.S.C. §

25  2301(3).

26      95.      Apple is a "supplier" and "warrantor" under the MMWA. 15 U.S.C. § 2301(4)-

27  (5).

28

---

96.     Through written and implied warranties, Apple warranted to Plaintiffs and Class members that the Laptops they purchased were free from defects, of merchantable quality, and fit for the ordinary purposes for which a laptop is used.

97.     Apple breached and refused to honor these written and implied promises. As a result of the butterfly keyboard defect, the Laptop is inoperable and fails to perform in accordance with its ordinary and intended purposes.

98.     Apple has been given reasonable opportunities to cure its breaches of warranty. Apple had actual knowledge and ample notice that the butterfly keyboard in the Laptop is defective as detailed above, but failed to provide an adequate remedy.

99.     The amount in controversy for purposes of Plaintiffs' individual claims exceeds $25.

100.    The amount in controversy in this action exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be adjudicated in the suit.

101.    As a direct and proximate result of Apple's breaches of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

102.    Plaintiffs also seek costs and expenses, including reasonable attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

### THIRD CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA SONG-BEVERLY CONSUMER WARRANTY ACT, CAL. CIV. CODE §§ 1790 *et seq.*

103.    Plaintiffs individually and on behalf of the Subclass incorporate by reference all of the allegations contained in the preceding paragraphs.

104.    Each of the Plaintiffs and Subclass members purchased a Laptop in its original packaging and did not alter their Laptops.

105.    At all relevant times, Defendant was in the business of manufacturing and selling the Laptops.

106.    The Laptops were and are used and bought primarily for personal, family, or household purposes and are therefore consumer goods.

107.    The Laptops contain a defect that renders them inoperable for typing.  The defect was present when the Laptops left Defendant's exclusive control and therefore existed during the duration of the warranty period.

108.    The Laptops were not of the same quality as those generally acceptable in the trade; were not fit for the ordinary purposes of a Laptop; were not adequately contained, packaged, and labeled; and did not conform to the promises and facts stated on the container and label.

109.    Defendant, therefore, breached the implied warranty of merchantability, which by law is provided in every consumer agreement for the sale of goods, including for the sale of the Laptops.

110.    The defect in the Laptops is latent. Though the Laptops appear operable when new, the defect existed in the product at the time of sale and throughout the one-year Limited Warranty period. Accordingly, any subsequent discovery of the defect beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

111.    As a direct and proximate cause of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the Subclass members have been damaged by receiving an inferior product from that which they were promised.

112.    Plaintiffs and the Subclass members, therefore, have the right to obtain damages in an amount to be proven at trial, or in the alternative, to cancel and recover the purchase price of their Laptops.

113.    Plaintiffs seek costs and expenses, including reasonable attorneys' fees, under CAL. CIV. CODE § 1794.

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

**CAL. BUS.&PROF. CODE § 17200, *ET SEQ.***

114.    Plaintiffs incorporate the above allegations by reference.

115.    Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL") proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

### *Unlawful*

116.    Apple's conduct is unlawful, in violation of the UCL, because it violates the California Consumer Legal Remedies Act, the Magnuson-Moss Warranty Act, the Song-Beverly Warranty Act, and constitutes breach of express warranties.

### *Deceptive*

117.    Apple's conduct described herein was also deceptive in violation of the UCL.

118.    Apple uniformly failed to disclose that the Laptops contained a latent defect and that the butterfly keyboards were prone to failure.

119.    Apple knew or reasonably should have known at all times that it sold the Laptops that the Laptops contained a latent defect and that the butterfly keyboards were prone to failure, rendering the Laptops inoperable.

120.    Apple advertised the Laptops by representing that they were functional, premium devices, and specifically highlighted the low-profile and purported superior responsiveness and stability of the butterfly switch keyboards.  These representations were misleading in light of Apple's failure to disclose that the Laptops were defective and that the butterfly keyboards were prone to failure.

121.    Apple's misleading representations and omissions regarding the Laptops were material.

122.    Apple's representations and omissions regarding the Laptops were likely to mislead a reasonable consumer.

123.    Plaintiffs suffered injury-in-fact, including lost money or property, as a result of Apple's unlawful and deceptive acts and omissions. Absent Apple's unlawful and deceptive conduct, Plaintiffs would not have purchased their Laptops, or would not have purchased them at the prices that they did.

CLASS ACTION COMPLAINT

124.    The Class also overpaid for the Laptops.  They would not have paid as much as they did for the Laptops absent Defendant's wrongful conduct.

125.    Through its unlawful and deceptive conduct, Apple acquired money from Plaintiffs and the Class directly and as passed on through Apple's authorized resellers.

126.    Plaintiffs and the Class seek restitution and such orders or judgments as may be necessary to enjoin Apple from continuing its unfair, unlawful, and fraudulent practices. Plaintiffs also seek reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure § 1021.5.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**

**CAL. CIV. CODE § 1750, ET SEQ. ("CLRA")**

**ON BEHALF OF THE SUBCLASS**

127.    Plaintiffs incorporate the above allegations by reference.

128.    Apple is a "person" within the meaning of CAL. CIV. CODE §§ 1761(c) and 1770, and provided "goods" within the meaning of CAL. CIV. CODE §§ 1761(a) and 1770.

129.    As alleged herein, Defendant represented that the Laptops had characteristics, uses, and benefits they do not have; represented that the Laptops are of a standard, quality, or grade that they are not; and advertised the Laptops with the intent not to sell them as advertised in violation of the CLRA, Cal. Civ. Code §§ 1770(a)(5), (7), and (9).

130.    Through pre-release testing and its review of consumer complaints, Apple was aware at all relevant times that the Laptops contain a latent defect and that their butterfly keyboards are prone to failure.

131.    Apple also made many general, partial representations regarding the Laptops' high quality and premium features, including the butterfly keyboard, that were materially misleading in light of its omission of facts related to the Laptops' latent defect and the butterfly keyboard's propensity to fail.

132.    Apple's misrepresentations and omissions were material. Had Plaintiffs and the Subclass members known that the Laptops are defective and their keyboards prone to failure,

1  they would not have purchased their Laptops or would not have purchased them for the prices
2  that they paid.

3      133.    Plaintiffs accordingly seek declaratory and injunctive relief. Plaintiffs further
4  intend to seek compensatory and punitive damages. Pursuant to CAL. CIV. CODE § 1782(a),
5  Plaintiffs will serve Defendant with notice of its alleged violations of the CLRA by certified mail
6  return receipt requested. If, within thirty days after the date of such notification, Defendant fails
7  to provide appropriate relief for its violations of the CLRA, Plaintiffs will amend this Complaint
8  to seek monetary damages.

9      134.    Notwithstanding any other statements in this Complaint, Plaintiffs, on behalf of
10  themselves and the Subclass, do not seek monetary damages in conjunction with this CLRA
11  claim—and will not do so—until this thirty-day period has elapsed.

12      135.    Plaintiffs are concurrently filing a declaration, attached as Exhibit A, stating facts
13  showing that this action has been commenced in a county that is the proper place for the trial of
14  this action in accordance Cal. Civ. Code § 1780(d).

15                              **PRAYER FOR RELIEF**

16      WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Subclass, request
17  that the Court order the following relief and enter judgment against Defendant as follows:

18      A.    An order certifying the proposed Nationwide Class and Subclass under Rule 23,
19            and appointing Plaintiffs to represent the Nationwide Class and Subclass;

20      B.    A declaration that Defendant has engaged in the illegal conduct alleged;

21      C.    An order that Defendant be permanently enjoined from its improper conduct;

22      D.    A judgment awarding Plaintiffs and the Nationwide Class and Subclass
23            restitution and disgorgement of all compensation obtained by Defendant through
24            its wrongful conduct;

25      E.    A judgment awarding Plaintiffs and the Nationwide Class and Subclass
26            compensatory damages in an amount to be proven at trial;

27      F.    Prejudgment and post-judgment interest at the maximum allowable rate;

28      G.    Attorneys' fees and expenses and the costs of this action; and

---

CLASS ACTION COMPLAINT

1    H.    All other relief that the Court deems necessary, just, and proper.

2                        **DEMAND FOR JURY TRIAL**

3    Plaintiffs hereby demand a trial by jury on all claims so triable.

4

5    Dated: May 22, 2018                    **SCHUBERT JONCKHEER & KOLBE LLP**

6                                           */s/Willem F. Jonckheer*
7                                           ROBERT C. SCHUBERT
                                            WILLEM F. JONCKHEER
8                                           MIRANDA P. KOLBE
                                            NOAH N. SCHUBERT
9                                           Three Embarcadero Center, Suite 1650
                                            San Francisco, California 94111
10                                          Telephone:    (415) 788-4220
                                            Facsimile:    (415) 788-0161
11

12                                          *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1  ROBERT C. SCHUBERT (S.B.N. 62684)
    (rschubert@sjk.law)
2  WILLEM F. JONCKHEER (S.B.N. 178748)
    (wjonckheer@sjk.law)
3  MIRANDA P. KOLBE (S.B.N. 213496)
    (mkolbe@sjk.law)
4  NOAH M. SCHUBERT (S.B.N. 278696)
    (nschubert@sjk.law)
5
6  **SCHUBERT JONCKHEER & KOLBE LLP**
    Three Embarcadero Center, Suite 1650
7  San Francisco, California 94111
    Telephone:    (415) 788-4220
8  Facsimile:     (415) 788-0161

9  *Attorneys for Plaintiffs Individually and on Behalf of*
10  *All Others Similarly Situated*

11           **UNITED STATES DISTRICT COURT**

12          **NORTHERN DISTRICT OF CALIFORNIA**

13

14

| | |
|---|---|
| 15  REMY TURNER, CHRISTOPHER MARTIN, and JOEY BARUCH, Individually and on Behalf of All Others Similarly Situated, | **Case No.** |
| | **DECLARATION OF WILLEM F. JONCKHEER IN SUPPORT OF COMPLAINT FOR VIOLATION OF CAL. CIV. CODE SECTION 1750 ET SEQ.** |
| 17        Plaintiffs, | |
| 18 | |
| 19  v. | **DEMAND FOR JURY TRIAL** |
| 20  APPLE INC., | |
| 21        Defendant. | |

22

23

24

25

26

27

28

1    I, Willem F. Jonckheer, hereby declare:

2    1.   I am one of the attorneys for Plaintiffs in the captioned case. I have personal

3    knowledge of the matters set forth herein, and could and would testify competently thereto if

4    called upon to do so. I submit this Declaration in Support of Plaintiffs' Class Action Complaint

5    against Defendant Apple Inc., which is based in part on violations of the Consumer Legal

6    Remedies Act, Cal. Civil Code Section 1750 et seq.

7    2.   This Court is the proper one for commencement and trial of this action under Cal.

8    Civ. Code Section 1780(d) because: (a) Defendant Apple Inc. is headquartered in this County

9    and District, has its principal place of business here, and is subject to jurisdiction here, and (b) a

10   substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this County

11   and District. Defendant Apple Inc. engaged in the promotion, marketing, distribution and sales

12   in this County and District of the products at issue in the Class Action Complaint.

13

14   I declare under penalty of perjury under the laws of the United States that the foregoing

15   is true and correct.

16

17   Executed this 22nd day of May 2018 at San Francisco, California.

18

19   _____

20                                    Willem F. Jonckheer

21

22

23

24

25

26

27

28

---